### N. WAGMAN & CO., Inc. v. UNITED STATES LINES CO. et al.

### Civ. No. 10012.

United States District Court
E. D. Pennsylvania.
March 31, 1952.

Benjamin F. Stahl, Jr., and John O. Platt, Jr., of Clark, Brown, McCown, Fortenbaugh & Young, of Philadelphia, Pa., for plaintiff.

Springer H. Moore, Jr., and with him Robert W. Bikle, of Krusen, Evans & Shaw, of Philadelphia, Pa., for defendant, United States Lines.

Harrison G. Kildare, Joseph W. Henderson, of Rawle & Henderson, Philadelphia, Pa., for defendant Phila. Piers, Inc.

BARD, District Judge.

This is a civil action for cargo damage to a shipment of bristles. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. Plaintiff is N. Wagman & Company, Incorporated, a Pennsylvania corporation with its principal office and place of business in Philadelphia, Pennsylvania.

2. Defendant United States Lines Company, a New Jersey corporation doing business in Philadelphia, owned and operated the S. S. Pioneer Sea.

3. Defendant Philadelphia Piers, Inc., a Delaware corporation with its principal place of business in Philadelphia, leased and operated Pier 98 South Wharves, Philadelphia.

4. Plaintiff owned fifty cases of various length Hankow black bristles which were shipped from Shanghai, China, on or about June 23, 1948, aboard the "Pioneer Sea".

5. On or about August 18, 1948, these cases of bristles were discharged in Philadelphia onto Pier 98 by stevedores engaged by defendant United States Lines Company.

6. On August 20, 1948, plaintiff's trucker arrived at the pier to remove forty-two cases to plaintiff's warehouse. The remaining eight cases were re-shipped to Belgium. Nineteen of these forty-two cases were found to be wet, and were receipted for as such; four of these nineteen cases were later found to contain undamaged bristles.

7. On August 24, 1948, a cargo surveyor preliminarily examined the cases at plaintiff's warehouse. At this time he also discovered that some cases had mud and water stains on them from an old wetting. He made the following classification: recent wetting—10 cases; mud stained—13 cases;

both wettings—2 cases; wet and mud stained—1 case; doubtful and old wetting—4 cases; undamaged—10 cases. One case was in the custody of customs appraisers, and another case was apparently overlooked by the surveyor when he testified.

8. The bristles were packed in solid appearing, well made wooden cases, each end of which was bound by metal bands. The cases were not new but were being re-used. The metal bands were rusted.

9. After opening all the cases, plaintiff found that the bristles in some cases were wet, in other cases were moldy, and in the remaining cases were undamaged. Thereafter, the surveyor made the following classification of damaged bristles: 10% damage (recent wetting)—10 cases; 35% damage (old wetting)—9 cases.

10. A comparison of the two classifications by individual case numbers reveals: Seven of the ten cases originally classified as recent wetting suffered 10% damage; one case suffered 35% damage; one case was listed as suffering 10% and 35% damage; and one case was not damaged. Four of the thirteen cases originally classified as mud stained suffered 35% damage; nine cases were not damaged. The two cases originally classified as both wettings suffered 35% damage. The one case originally classified as wet and mud stained suffered 10% damage. The four cases originally classified as doubtful and old wetting were not damaged. The one case held by customs appraisers suffered 35% damage. The one overlooked case suffered 10% damage.

11. The recent and old wettings were both fresh water wettings.

12. The mud stains on the cases had no connection with the internal damage to the bristles.

13. The 35% internal damage to the bristles frequently corresponded with the old water stains on the cases, but not all water stained cases contained damaged bristles.

14. The 10% internal damage to the bristles corresponded with the damp surfaces of the cases from the recent wetting.

15. The old wetting occurred at least one month or more before the surveyor's examination of the cases and the bristles, a time which establishes the wetting as having occurred while the cases were aboard the "Pioneer Sea" or while they were stored in China.

16. The cases were properly examined as they were loaded in the hold of the "Pioneer Sea". The cases were not wet, and the mud and water stains were not so obvious that they should have been noticed by the ship's checkers during loading operations. No exceptions were taken as to the condition of the cases, and a clean bill of lading was issued.

17. Before the cases were loaded aboard the "Pioneer Sea", the holds were thoroughly cleaned. The cases were loaded during clear weather, and were stowed on three layers of dunnage with additional dunnage separations between this and other cargo in the hold. Sweat battens and air space separated these cases and the other cargo from the sides of the vessel and the bulkheads. At least a three foot space was left between the cargo and the top of the hold for the passage of air. The holds were kept closed during the voyage. There were no water pipes in the hold in which these cases were stowed, and the hold was properly ventilated by blowers during the voyage. The hold was inspected daily and was found dry at all times; at no time during the voyage was any evidence of mud or water discovered near these cases or in that hold. The weather on the voyage was better than average, and the air and water temperatures remained fairly constant, thereby reducing the amount of sweating by the vessel. The cargo surrounding these cases was clean and dry by nature, and the chief mate had no knowledge of any water damage to any of this surrounding cargo.

18. No evidence was introduced to show where or under what conditions the cases were stored in China, nor was there any evidence of the weather conditions during such storage.

19. The cases and bristles were discharged at Philadelphia from the "Pioneer Sea" in the same condition in which they were received aboard for shipment at Shanghai.

20. The 35% damage to the bristles was neither caused nor contributed to by any actual fault or privity of defendant United States Lines Co. nor by any fault or neglect of its agents or servants.

21. Upon discharge from the "Pioneer Sea", the cases were stored two high without dunnage upon the concrete floor within the shed of Pier 98 in an area leased by defendant United States Lines Company from defendant Philadelphia Piers, Inc.

22. A considerable amount of rain fell while the cases were so stored on Pier 98.

23. The recent wetting occurred while the cases were so stored on Pier 98 as a result of a defective or faultily operating drain pipe from the roof of the pier.

24. Defendant United States Lines Company had no knowledge or notice of the defective or faulty condition of this drain pipe.

25. Pier 98 had and has a good reputation for being a fit pier, which reputation was known to defendant United States Lines Company.

26. Defendant United States Lines Company exercised ordinary and reasonable care for the protection of these cases after they were discharged from the "Pioneer Sea".

27. Defendant Philadelphia Piers, Inc. was responsible for maintaining this drain pipe in good working condition.

28. Plaintiff was diligent in removing these cases from Pier 98.

29. By stipulation of the parties, the bristles in case numbers 10794, 10802, 10803, 10805, 10813, 10822, 10823, 10832 and 10833 were damaged to the extent of 35% of their value, or a total damage of $1,797.41 from the old wetting.

30. By stipulation of the parties, the bristles in case number 10831, which was shipped to Belgium, suffered 35% damage from the old wetting in the amount of $456.17.

31. By stipulation of the parties, the bristles in case numbers 10812, 10814, 10815, 10818, 10819, 10827, 10829, 10830, 10834 and 10835 were damaged to the extent of 10% of their value, or a total damage of $867.85 from the recent wetting.

## Conclusions of Law.

1. This Court has jurisdiction of this case.

2. The clean bill of lading was only prima facie proof that the cases of bristles were received aboard the "Pioneer Sea" in apparent good order and condition.

3. The 35% damage to the bristles was neither caused nor contributed to by any actual fault or privity of defendant United States Lines Company or by any fault or neglect of its agents or servants. 46 U.S.C.A. § 1304 (2)(q).

4. With regard to the 35% damage, plaintiff has not proved that the bristles were in actual good order and condition when loaded aboard the "Pioneer Sea".

5. Defendant United States Lines Company is not liable to plaintiff for the 35% damage to the bristles.

6. Defendant Philadelphia Piers, Inc. is not liable to plaintiff for the 35% damage to the bristles.

7. The 10% damage to the bristles occurred while the cases were stored on Pier 98 South Wharves.

8. The 10% damage to the bristles was caused by water leaking from a defective or faultily operating drain pipe from the roof of Pier 98.

9. Defendant United States Lines Company was not negligent in its care and protection of these cases of bristles after discharging them from the "Pioneer Sea" onto Pier 98.

10. Defendant United States Lines Company is not liable to plaintiff for the 10% damage to the bristles.

11. Plaintiff was not negligent in allowing the cases of bristles to remain on Pier 98 for two days after they were discharged from the "Pioneer Sea".

12. Defendant Philadelphia Piers, Inc. was responsible for maintaining the drain pipe in good working condition.

13. Defendant Philadelphia Piers, Inc. was negligent in failing to maintain this drain pipe in good working condition.

14. Defendant Philadelphia Piers, Inc. is liable to plaintiff for the 10% damage to

the bristles. Home Ins. Co. v. Philadelphia Piers Inc., D.C., 100 F.Supp. 348.

15. Plaintiff suffered a loss of $867.85 as a result of the 10% damage to the bristles.

16. Judgment is hereby entered in favor of defendant United States Lines Company and against plaintiff.

17. Judgment in the amount of $867.85 is hereby entered in favor of plaintiff and against defendant Philadelphia Piers, Inc.